Argued and submitted September 21, 1987, affirmed July 20, reconsideration denied
September 2, petition for review denied September 29, 1988 (306 Or 661)

In the Matter of the Application of
ICMA Retirement Corporation, for a
Declaratory Ruling as to the Applicability of
Certain Deferred Compensation Plans of
Executive Department, Accounting Division,
Temporary Rule.

ICMA RETIREMENT CORPORATION,
*Petitioner,*

*v.*

EXECUTIVE DEPARTMENT et al,
*Respondents.*

(CA A43929)

757 P2d 868

William H. Walters, Portland, argued the cause for petitioner. With him on the briefs were Mark C. McClanahan and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief was

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

Petitioner, a purported provider of deferred compensation plans, seeks review of a declaratory ruling of respondents, the Executive Department and the Oregon Investment Council. ORS 183.410. That ruling held that the state would violate Article XI, section 6, of the Oregon Constitution and a temporary rule of the Executive Department if the state invested deferred compensation moneys in ICMA's "Plan A," to the extent the monies would be invested under that plan in the "Stock Fund" or the "Balanced Fund." We affirm.

Article XI, section 6, provides:

"The state shall not subscribe to, or be interested in the stock of any company, association or corporation."

The Executive Department's temporary rule, adopted on February 20, 1987, provides:

"In administering the Deferred Compensation Program under the provisions of ORS 243.470, the Executive Department shall not authorize transfer of Deferred Compensation funds for the purpose of investment if to do so would violate Article XI, Section 6 of the Oregon Constitution; nor shall the Executive Department provide, administer or maintain Deferred Compensation plans which violate Article XI, Section 6 of the Oregon Constitution."

ORS 243.400 *et seq* provides that the state may enter into agreements with its employes to defer portions of the employes' pay. ORS 243.400(2) defines a deferred compensation plan as

"an agreement between the state and an eligible employe that provides for payment by the state at a future date for services currently rendered by the eligible employe, and under which the state promises to pay the eligible employe fixed or variable amounts for life or for a guaranteed number of years after retirement or termination of employment."

The state places all moneys that it withholds as deferred compensation and all interest therefrom in the State Employes' Deferred Compensation Revolving Fund (fund). ORS 243.495(2). That fund is "continuously appropriated to

and at the disposal of the Executive Department for invest-
ment or deposit." ORS 243.495(3). The Executive Depart-
ment administers the deferred compensation program. ORS
243.410. The Oregon Investment Council designs the pro-
gram, ORS 243.410 and ORS 243.420, and may contract to
invest the fund money "in trusts in which deferred compensa-
tion funds from other public employes are pooled." ORS
243.430.

Under ICMA's Plan A, deferred compensation mon-
eys would be placed in a trust and then invested. Employes
could choose between four types of investments, in two of
which—the "Stock Fund" and the "Balanced Fund"—the
trust would invest in the stock of private corporations.
Respondent ruled that the plan would violate Article XI, sec-
tion 6, to the extent that deferred compensation moneys
would be invested in stocks, because the state is the beneficial
owner of those moneys.

Respondent's declaratory ruling did not "erroneously
interpret a provision of law." *See* ORS 183.482(8)(a). The
state would "own" money invested in stocks under the plan,
because the money remains the state's asset until it is ulti-
mately distributed to employes. The money belongs to the
state whether it is in the fund or invested. ORS 243.495(4)
provides:

> "All moneys in the revolving fund established under this
> section remain the unrestricted assets of the State of Oregon
> and are subject to recovery by the general creditors of the
> State of Oregon until such time as the moneys are distributed
> to an eligible employe or the beneficiary of the employe in
> accordance with the terms of the agreement between the eligi-
> ble employe and the state."

Moreover, ORS 243.490(1) states that the obligation of the
state

> "to the eligible employe shall be a contractual obligation only
> with no preferred or special interest in deferred funds to such
> eligible employe."

Furthermore, ORS 243.490(2) provides:

> "If the state acquires any contracts or other assets in con-
> nection with the duties assumed by it under ORS 243.400 to
> 243.495, 295.022 and 723.184, an eligible employe or benefi-
> ciary has no right with respect to, or claim against, those

contracts or other assets. The contracts or other assets shall not be held as collateral security for the fulfilling of obligations of the State of Oregon under a deferred compensation plan, and shall be subject to the claims of creditors of the state."

ICMA argues that the state should be not regarded as the "owner" of deferred compensation money, because it owns the money only to the extent necessary to satisfy federal tax law.[1] It contends that the employes are the beneficial owners, because deferred compensation is credited to employes for the purpose of computing retirement, pension and social security benefits. ORS 243.460(1). Although those benefits are computed as if the employes had received the deferred compensation, the state continues to have a proprietary interest in the money. *See* ORS 243.495.

ICMA contends that, for purposes of investment decisions, Oregon law treats deferred compensation as belonging to the employe. That is not accurate. Although ORS 243.445 states that "the employe may indicate a preference with respect to the mode of investment or deposit to be used by the state investing or depositing" the deferred compensation, *see also* ORS 243.410(1), it also provides that "the employe's choice shall not be binding on the Executive Department."

ICMA argues that Article XI, section 6, does not forbid the state from investing deferred compensation in ICMA's plan, because, even if the state has a proprietary interest in the money, the investment involves no risk of loss to the state. *See* ORS 243.430(2). Even if that is so, Article XI,

---

[1] 26 USC 457(b)(6) provides:

"(b) For purposes of this section, the term 'eligible State deferred compensation plan' means a plan established and maintained by a State —
"* * * * *
"(6) which provides that —
   "(A) all amounts of compensation deferred under the plan,
   "(B) all property and rights purchased with such amounts, and
   "(C) all income attributable to such amounts, property, or rights,
"shall remain (until made available to the participant or other beneficiary) *solely the property and rights of the State* (without being restricted to the provision of benefits under the plan) *subject only to the claims of the state's general creditors.*" (Emphasis supplied.)

section 6, does not merely prohibit speculative investments. In *Sprague v. Straub,* 252 Or 507, 451 P2d 49 (1969), the court addressed whether the state treasurer would violate Article XI, section 6, if he contracted to invest funds of the Industrial Accident Fund and the Public Employes' Retirement Fund in common stocks of corporations. It held that Article XI, section 6, does not apply, because the state is merely custodian of the money and has "no proprietary interests in the fund." 252 Or at 521. It reached that conclusion, even though "a loss resulting from the investment of the fund in corporate stock could affect the financial interests of the state." 252 Or at 524. The threshold test is not risk of loss, but ownership. The court stated that, "putting together all of the evidence and factors bearing upon the meaning of Article XI, § 6, * * * [it] constitutes a general prohibition against the purchase of corporate stocks by the state of Oregon." 252 Or at 518.

Here, the state would have a "proprietary" or "ownership" interest in the deferred compensation money that would be invested in ICMA's plan. The purchase of corporate stock with deferred compensation money, therefore, is barred by the "general prohibition" of Article XI, section 6, against the state's purchase of corporate stock.[2]

ICMA contends that, even if the state is "technically" the beneficial owner of the fund, it may transfer the fund to a trustee to invest in corporate stocks, because that "is not a device to circumvent the constitution." *Sprague v. Straub, supra,* 252 Or at 525. That argument ignores the basic requirement that the state cannot purchase stock with money it owns, which is precisely what it would do here.

Affirmed.

---

[2] In *Sprague v. Straub, supra,* 252 Or at 524, the court also stated:

"We are of the opinion that the *people intended the prohibition in Article XI, § 6 to apply only to funds owned by the state* and not to funds which the state has expended and for which the state has received a quid pro quo, as it does when it receives coverage for its employees through its contributions as an employer to these funds." (Emphasis supplied.)